UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) | Criminal No.: 13-44-GFVT |
| | ) | Criminal No.: 14-23-GFVT |
| V. | ) ) | |
| KEVIN ALLEN DAVIS, JESSE RICHARDSON, JR., JOHN EVERETT CARR, BRIAN M. IRVIN, and FLOYD SHELTON, JR., | ) ) ) ) ) | **MEMORANDUM OPINION** **&** **ORDER** |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Defendants Kevin Allen Davis, Jesse Richardson, Jr., John Everett Carr, Brian M. Irvin, and Floyd Shelton, Jr. operated a theft ring involving stolen vehicles and vehicle components. After each pled guilty to aiding and abetting the disposition of stolen vehicles across state lines or to conspiracy to operate a chop shop, this Court sentenced them for their involvement in this scheme (London Criminal No. 13-44-GFVT), as well as Brian Irvin's involvement as an accessory after the fact (London Criminal No. 14-23-GFVT), but deferred ruling on the amount of restitution pursuant to 18 U.S.C. § 3664(d)(5). [No. 13-44-GFVT, R. 217, 218, 219, 224; No. 14-23-GFVT, R. 22]. Prior to those sentencings, the Court conducted a restitution hearing, [R. 171], and the United States filed a supplemental memorandum in support of its recommended restitution amounts, [R. 172]. Defendants Davis, Carr, Irvin, and Shelton filed objections. [R. 177, 180, 181, 182]. Having reviewed the evidence, the Defendants' objections, and all relevant filings, the Court will order restitution for the victims of the Defendants' crimes.

I

Between July and October of 2009, Kevin Allen Davis, aided by Jesse Richardson and John Everett Carr, stole vehicles and heavy machinery from Tennessee and Georgia. These stolen items were brought back to Whitley County, Kentucky, where they were either sold intact, dismantled and sold, or stored on property owned by Floyd Shelton and Brian Irvin for future resale. After all five defendants entered guilty pleas, the parties moved for a restitution hearing, [R. 166], which the Court convened on October 29, 2014.

During the restitution hearing, the Government introduced a spreadsheet created by the United States Probation Office identifying the thirty-one stolen items, the victims, the fair market value for each item at the time of the theft,[1] and each defendant's respective liability for those losses. [*See* R. 170, Government Ex. 2]. The chart was included in each defendant's presentence investigation report for purposes of calculating the loss amount relevant to the defendant's offense level under the United States Sentencing Guidelines. The Government also introduced the affidavits of fifteen victims setting forth their losses and expenses arising from this offense. [R. 170, Government Ex. 1].

The Court heard testimony from United States Probation Officer Melissa Jeffries, who compiled the spreadsheet and victims' declarations of loss, and Kentucky State Police Detective Ryan Judd, who handled the investigation and recovery of the items. Victim Lora Treece, co-owner of City Limits Motors, also testified regarding her losses, as well as the broader impact of the theft on her business. The specific relevant facts from each witness' testimony are included as needed below.

---

[1] Detective Judd testified that this value reflects the amount reported by the victim in the police report.

At the Court's direction, the Government filed a supplemental brief to amend its proposed restitution amounts, explain the methodology it used to reach those figures, and offer additional evidence. [R. 172]. It seeks restitution for the following items:[2]

- a GMC Rollback Truck and tools (Item 1);[3]
- a 1996 Ford Dump Truck chassis (Item 5) and its bed (Item 11);
- a 1999 Ford F550 truck (Item 7);
- a 2007 Hardeebuilt trailer (Item 14);
- a 2004 Ford truck (Item 18);
- a New Holland skid steer (Item 26);
- a 1990 Ford bucket truck (Item 20);
- a 1999 Dodge truck and its attached equipment (Item 21);
- a 2001 Chevy truck (Item 19) and its rollback bed (Item 13);
- a Jerdan rollback bed (Item 23); and
- a second New Holland skid steer (Item 25).

[*See id.*]. Four of the five defendants filed objections challenging the Government's requested amounts. [R. 177, 180, 181, 182].

II

The Mandatory Victim Restitution Act, 18 U.S.C. §§ 3663A-3664, requires that a defendant pay court-ordered restitution to victims of offenses against property under Title 18, which includes the chop-shop and interstate automobile theft crimes at issue here. 18 U.S.C. § 3663A(c). Because the plea agreements in the instant case identify the victims and stipulate those to whom each defendant is liable,[4] the only issue before the Court is

---

[2] During the hearing or in its subsequent brief, the Government conceded that restitution was inappropriate on a number of items. [R. 172]. These include Items 2, 3, 4, 6, 8, 9, 10, 12, 15, 16, 17, 22, 24, 27, 28, 29, 30, 31. [*Id.*]. Although some of these items were recovered, the Government declined to pursue restitution because the owner could not be located or failed to submit any claims forms, or because the Government conceded that it was unable to adduce enough proof.

[3] For clarity, the Court will use the item numbers assigned in the spreadsheet.

[4] The United States did not seek, and the United States Probation Office did not recommend, joint and several liability for the total restitution in these cases. Rather, as the Government explained during the hearing, the parties agreed upon the items for which each defendant would be responsible, based on each defendant's association with that item, in an effort to fairly attribute the liability. The parties did agree that where more than one defendant is responsible for a particular item, the restitution for that item would be divided equally among those defendants. Unless otherwise indicated, this Opinion does not address or calculate each defendant's individualized amount of liability in those instances. Instead, this Opinion

3

the amount of restitution. The United States has the burden of demonstrating each defendant's respective amount of restitution by a preponderance of the evidence. 18 U.S.C. § 3664(e); *United States v. Vandeberg*, 201 F.3d 805, 814 (6th Cir. 2000).

A

The Government seeks a total of $9,000 in restitution for a 1996 Ford dump truck chassis (Item 5) and bed (Item 11). This vehicle was owned by Hall's Nursery and was not insured for loss; both of these components were recovered, but the truck had been dismantled and would no longer run. In addition to the victim's sworn declarations of loss, [R. 170, Ex. 1 at 60], the Government supplied a Declaration from Assistant United States Attorney Thomas Lee Gentry detailing further information obtained from John Acuff, the owner of Hall's Nursery.[5] [R. 172-1 at ¶ 2]. Acuff stated that, at the time of the theft, the two items were worth $8,500 ($7,000 for the truck and $1,500 for the bed). [*Id.*] The owner incurred $500 in expenses in travelling to retrieve the property, and he later traded the component parts for mechanic services worth $1,000. [*Id.*] Accordingly, the $8,500 value minus the $1,000 recovery for bartered mechanic services, plus the $500 in travel expenses yields an $8,000 net loss. Because these items are related, the Government apportioned this loss between the two defendants to reach its recommended restitution award of $7,000 for Item 5 and $1,000 for Item 11. [R. 172 at 4].

---

determines the total amount of restitution owed to each victim for each item. A forthcoming Amended Judgment will set forth each defendant's individualized amount of liability.

[5] The Court notes that a district court may consider hearsay testimony regarding the extent of a victim's loss in determining the amount of restitution, so long as the testimony bears some indicia of reliability. *United States v. Elson*, 577 F.3d 713, 732 (6th Cir. 2009).

Defendant Irvin, who is liable for Item 5,[6] argues that the restitution amount for these items should be allocated proportionately between these two related items. The Government did not explain its methodology in apportioning these items. However, its $7,000/$1,000 apportionment appears to give Shelton, who is liable for Item 11, a $500 windfall in light of the claimed fair market values of $7,000 and $1,500, respectively. The Court agrees that a pro-rata distribution of the net loss is more appropriate.  Irvin is liable for Item 5, which had a fair market value of $7,000 and accounts for 82.3% of the victim's total loss of $8,500.  He is therefore responsible for the $6,995.50 (82.3% of $8,500) for the proportional fair market value of the item, plus his proportional share of the $500 travel expenses (82.3% of $500 = $411.50), minus his proportional share of the victim's $1,000 bartered sale (82.3% of $1,000 = $823).  Accordingly, Irvin is liable for $6,584.00 for Item 5.[7]

B

The Government seeks a restitution in the amount of $27,300 for the owner of Item 7, a 1999 Ford F550.  This item was stolen from an individual who operated a towing company, and it was not insured for loss.  The chassis of the vehicle was returned to the victim, who sold it for $3,000.  [R. 170, Ex. 1 at 59].  In his affidavit, the victim

---

[6] In a Notice filed at Docket Entry 176, the Government clarified that liability for Item 5 should be attributed to Irvin alone – not Irvin and Davis, as it had mistakenly indicated in its initial Memorandum [R. 172].

[7] The Government sought restitution in the amount of $1,000 from Shelton on related Item 11; Shelton did not object to that amount.  After adjusting the calculation for that item in the same manner, however, Shelton should have been held responsible for $1,416.00. (Item 11, which had a fair market value of $1,500 prior to the theft, amounts to about 17.7% of the victim's $8,500 loss.  Shelton is therefore responsible for $1,504.50 for the proportional fair market value of the item, plus his proportional share of the travel expenses (17.7% of $500 = $88.50), minus his proportional share of the victim's barter proceeds (17.7% of $1,000 = $177).  This amounts to a total liability of $1,416.00.) This figure exceeds the loss amount that was attributed to Shelton for this item in his plea agreement.  The United States failed to seek this amount in restitution, and Shelton has not had an opportunity to object to this larger, proportional amount.  Accordingly, the Court will order the $1,000 restitution amount originally proposed by the Government for Item 11.

estimated that the fair market value of his vehicle was $17,500, so he incurred a net loss of $14,500. [*Id.*] Because the vehicle was integral to his towing business, the victim also sought lost profits stemming from the business he lost during the eight months without a vehicle. His affidavit states that he had been netting $1,600 per month, for a total of $12,800 in lost profits. [*Id.*]

Defendant Irvin argues that the victim failed to provide documentation to support his valuation and lost earnings. "All that is required in the restitution context is a 'modicum of reliable evidence.'" *United States v. Lopez*, 503 Fed. App'x 147, 149 (3d Cir. 2012) (quoting *United States v. Salas-Fernandez*, 620 F.3d 45, 48 (1st Cir. 2010)). At least two circuits have held that a signed, sworn "victim impact statement can be sufficient to establish the amount of a loss." *Id*. (holding that a signed, unsworn letter, as "the equivalent of a victim impact statement," was sufficient); *see also, e.g.*, *United States v. Rochester*, 898 F.2d 971, 982 (5th Cir. 1990) (holding that an affidavit is sufficient to establish the amount due on a loan for restitution purposes); *United States v. Rezaq*, 134 F.3d 1121, 1141 (D.C. Cir. 1998), *cert. denied* 1998 U.S. LEXIS 5084 (1998) (upholding district court's restitution award based on victim impact statements setting forth, among other things, their loss of income and property, as well as signed statements from physicians, psychiatrists, and employers corroborating the victims' accounts). Indeed, a number of circuits have upheld restitution awards based on much less. *United States v. Hamad*, No. 07-2147, 300 Fed. App'x 401 (6th Cir. Nov. 13, 2008); *United States v. Pickett*, 387 Fed. App'x 32, 36 (2d Cir. 2010) (rejecting defendant's argument that the Government was required to offer proof of the loss amounts for each victim through affidavits and holding that trial testimony of a case agent and a loss spreadsheet

were sufficient to establish the amount of loss by a preponderance); *United States v. Bales*, 813 F.2d 1289, 1298 (4th Cir. 1987) (upholding restitution award based on bank official's statements regarding total loss, as quoted in the PSR).

The Court is persuaded that the victim's affidavit – a signed declaration made under penalty of perjury that detailed the amounts of loss and explained how each figure was arrived at – bears sufficient indicia of reliability and demonstrates the amount of loss by a preponderance of the evidence. This applies equally to the lost profits set forth in the same affidavit. The Sixth Circuit has held that a signed, unsworn letter containing sufficient indicia of reliability can form a sufficient basis for restitution covering lost profits. *Hamad*, 300 Fed. App'x 401 (upholding restitution award based on signed, unsworn letter of victim regarding his losses, including lost profits in his home appraisal company arising from the defendant's mortgage fraud). Though Defendant Irvin objects generally, he has offered no evidence directly contradicting the victim's stated amounts. Accordingly, restitution for this item will be imposed in the amount requested by the Government.

C

The Government proposes a total of $21,024.38 in restitution for Item 1, a GMC rollback truck and its attached tools. This item was stolen from City Limits Motors and was insured by Hauler's Insurance. Lora Treece, the owner of City Limits Motors, testified at the hearing that the company received a total of $18,774.38 from its insurer ($18,000.00 for the truck and $774.38 for the tools). [R. 170, Government Ex. 1 at 49; *id.*, Government Ex. 3]. Because the company was not made whole through this payment, it sought the difference between the fair market value of the property at the time

7

it was stolen ($20,000, pursuant to a 1998 Bill of Sale, [R. 170, Ex. 1 at 51]) and the amount it recovered from its insurer for the truck ($18,000), plus its $250 deductible, for a total amount of $2,250. Defendants do not object to the amount of this obligation to City Limits Motors.

The parties disagree about the amount and itemization of restitution to Haulers Insurance. Although the insurer did not expressly itemize its losses in its affidavit, a careful review of the record demonstrates that Haulers should be entitled to a total of $12,750 in restitution. After Haulers paid City Limits' claim, law enforcement recovered the truck intact and in working order. According to its claims documents, Haulers hired a towing company to tow ($250) and store the truck for eight months ($6,000), until apparently it agreed to allow the towing company to keep the truck, along with an additional $1,000, to satisfy its $6,250 bill. [R. 170, Ex. 1 at 37 (invoice from towing company states: "Company agreed to send title to truck & send check for the amount of $1000.00 dollars [sic] to resolve bill"); *id.* at 36 (Haulers' check of $1,000 mailed to the towing company four days later)]. In this bartered exchange, the truck was valued at $5,250.[8]

Haulers initially sought an unitemized $19,250.00 in restitution. [R. 170, Government Ex. 1 at 39]. Meanwhile – without reference to the bartered exchange – the Government recommends an award of $18,774.38. Because of the trade, however, neither of these amounts accurately reflects Haulers' loss. On the other hand, the Court does not agree with Defendants that Haulers' affidavit and documentation are so speculative as to entirely preclude restitution for the truck. As noted above, a victim's

---

[8] In other words, Haulers paid $1,000 for $6,250 in services, resulting in a gain of $5,250.

8

signed, sworn statement is sufficient to support an amount of loss. *E.g.*, *Lopez*, 503 Fed. App'x at 149. This is particularly true where the victim's documentation – which includes the towing company invoice, the proof of loss form and copies of checks paid to its insured and the towing company – is sufficiently clear and reliable to form a basis for the proper amount of restitution. [R. 170, Ex. 1 at 31-38]. Haulers' affidavit and documentation demonstrate that it paid $18,000 to its insured,[9] but it recouped $5,250 through its bartered exchange of the truck. This yields a total restitution award of $12,750 for Haulers Insurance.

D

The Government also seeks restitution for Item 20, a Ford bucket truck owned by Faris Properties and insured by Donegal Mutual Insurance. This truck was returned to intact and without significant damage to the victim. During the hearing, it became apparent that four different figures were submitted for this item. The victim's initial valuation of $12,000 was included in the police report;[10] in the hearing, the Government indicated that the parties used this figure to calculate the agreed-upon loss amounts in their plea agreements. The victim later submitted a signed declaration of loss seeking $4,550, without any explanation for that figure, and affirming that he had received $16,450.00 as reimbursement from his insurance company. [R. 170, Ex. 1 at 16]. The insurance company, however, submitted a declaration of loss for $15,686.50, but included no documentation or claims forms to explain how it arrived at this figure. [R.

---

[9] Haulers provided no documentation relating to its payment for City Motor's tools, and its requested restitution amount listed in its signed Declaration of Losses does not appear to include that $774.38 figure, so the Court cannot include it.

[10] During the hearing, Detective Judd indicated that the victim confirmed this valuation in a subsequent phone call.

170, Ex. 1 at 14]. During the hearing, the Government stated that it would obtain more detailed reports and supplement its restitution claim for this item because the information provided by the victims was "too sketchy." No supplementary documentation was filed as to this item, however. The Government admitted in its brief that "[t]he claimants failed to provide documentation of their claims, did not appear for the hearing and [Assistant United States Attorney Gentry] has been unable to speak with them about their claims," and it did not propose a total restitution amount for this item – but it did not go so far as to expressly concede this restitution claim. [R. 172 at 8].

The Court agrees with Defendants that, at this time, the Government has not met its burden of proving the amount of restitution for this item. Unlike other victim affidavits which provide detail and bolster their reliability, both of these victims have only offered a blanket figure without explanation or documentation. Moreover, the inconsistent figures they have quoted detract significantly from the reliability of their affidavits. The Government may, however, provide supplementary information about these victims' losses as prescribed in the Order below. *Dolan v. United States*, 560 U.S. 605, 608 (2010) (holding that restitution order may be entered after the 90-day deadline under 18 U.S.C. § 3664(d)(5) where "the sentencing court [makes] clear prior to the deadline's expiration that it would order restitution, leaving open (for more than 90 days) only the amount.").

E

Defendant Carr objects to proposed restitution in the amount of $15,000 for Item 21, a 1999 Dodge truck and its attached custom equipment owned by the United States Department of Agriculture National Resources Conservation Service. In an attachment to

10

its signed declaration of losses, the NRCS explained that as of that date the Bluebook value of the truck was $3,137.00. [R. 170, Ex. 1 at 26-27]. Affixed to the truck was a specialized probe and related equipment valued at $3,400 and a customized bed, which was built in 2012 at a cost of $6,600. [*Id.* at 27]. The NRCS also sought "administrative fees for the agency paperwork" involved in the loss in the amount of $1,863. [*Id.*]

Defendant Carr[11] argues that the NRCS failed to offer documentation of the truck's valuation and the administrative fees it seeks. Again, however, the Court finds that the NRCS's signed, sworn declaration of loss, complete with a detailed explanation of its losses, bears sufficient indicia of reliability. *See Lopez,* 503 Fed. App'x at 149. The administrative fees sought are reasonable in amount, and the proposed valuation is expressly based on the truck's Bluebook value, a reliable and objective indicator of a vehicle's fair market value. Defendant Carr has not offered any documentary evidence refuting these figures. The Court is satisfied that the Government has met its burden in establishing the amount of restitution for this item.

### F

Finally, Defendants object to the proposed restitution amounts arising from the theft of related Items 14 (a 2007 Hardeebuilt trailer), Item 18 (a 2004 Ford truck), Item 26 (a New Holland skid steer). These items were owned by Dreamscapes Lawn Maintenance and were insured for loss by Hortica Insurance. Defendants Davis, Richardson, Carr and Shelton are liable for Item 14, while Davis, Richardson, and Carr are responsible for Items 18 and 26. [R. 172 at 7]. During the hearing, it became apparent that some thirty-one pages of documentation provided by Hortica had been

---

[11] Defendant Richardson is also liable for restitution on this item, but filed no objection.

received by the U.S. Probation Officer but were not included among the victims' declarations of loss in Government Exhibit 1.  The Government supplemented these documents.  [R. 172-2].  According to those documents and the Government's briefing, Dreamscapes seeks $1,250 in losses, covering payment of its deductibles.  [R. 170, Ex. 1 at 28-30].  The claims documents show that Hortica paid a total of $22,540.49 to its insured for the three items.  [R. 172-2 at 1, 2, 5].  In order to fairly allocate the restitution amount assigned to each defendant, and because Defendant Shelton is not responsible for Items 18 and 26, the Government apportioned the amount for each item based on the fair market value assigned to the items in the plea agreements.  [R. 172 at 7 (noting that Item 14 constitutes 10% of the total loss for all three items)].  Under this calculation – to which Defendants do not object – the Government requests the following amounts:

- For Item 14: $2,254.05 to Hortica, to be divided equally between the four defendants liable for that item; $125.00 to Dreamscapes, to be divided equally between the four defendants liable for that item.

- For Items 18 and 26: $20,286.44 to Hortica, to be divided equally between the three defendants liable for that item; $1,125.00 to Dreamscapes, to be divided equally between the three defendants liable for that item.

[*See id*.]  The defendants have no objection to the total $1,125.00 award to Dreamscapes.  However, the Court notes that according to the United States' 1:9 ratio for apportioning the loss between Item 14 and Items 18 and 26, the correct amounts owed to Dreamscapes would be $112.50 for Item 14 and $1,012.50 for Items 18 and 26.

The restitution amount owed to Hortica, however, is less clear.  During the hearing, Detective Judd testified that these items were returned to Hortica in "usable"

12

condition after they were recovered.  Defendants argue that, since insurance companies typically sell recovered vehicles for which they have already paid their claim, Hortica must have recouped its losses;[12] they claim that Hortica failed to document the proceeds of these alleged sales, so the requested award of $22,540.49 would give it a double-recovery.  Hortica's documents show that it paid towing and recovery fees to a Corbin towing company to retrieve the items, so the items were in Hortica's control as of October 15, 2009.  [R. 172-2 at 8].  This, without more, shows that Hortica experienced gain in the form of the post-theft fair market value of the items.

Unlike the bartered exchange of Item 1 by its insurer, nothing in Hortica's records affirmatively documents a sale of the item.  However, a few references indicate that one might have taken place.  Hortica's documentation includes photos of the salvaged vehicles from McIntyre, Gilligan & Mundt, an independent appraisal firm, suggesting that a sale took place, or, at the very least, that some post-theft fair market value might have been determined.  [R. 172-2 at 25-31].  An invoice from Copart Auto Auctions indicates that the Ford truck (Item 18) was transported to Lexington and references a "sale date" of March 31, 2010 in the "junk program."  [R. 172-2 at 7].  Because documents in Hortica's signed, sworn declaration of loss and the testimony of Detective Judd demonstrate that Hortica received some gain, either by its receipt of the returned items or by their sale, the Court cannot say that an award in the requested amount of $22,540.49 – without any reduction for the value of the returned items or any sale proceeds it may have received – is supported by the record.

---

[12] Contrary to Defendant Davis' argument, Detective Judd agreed that it was standard practice for insurers to sell recovered vehicles, but testified that he was not aware of any information indicating whether and for how much these items were sold.

13

Defendants ask that the Court reduce Hortica's award by $13,609.51, for a total award of $8,930.98. They claim that this $13,609.51 figure represents the difference between the fair market value reported by the victim at the time of the theft, as reflected in the plea agreements (a total of $36,150 for all three items) and the amount Hortica paid to its insured ($22,540.49). [R. 177 at 3]. Aside from the unclear methodology for this calculation,[13] the fair market value of the items *after* the theft – and not the cited fair market value *before* the theft – is the relevant figure for assessing how much Hortica recouped. Indeed, the record shows that the items may have been significantly below the pre-theft fair market value. Although Detective Judd indicated that to his knowledge the items were in working condition, the photos and references in Hortica's records show that at least one item – the Ford truck – was burned and stripped of certain parts, including tires. [R. 172-2 at 7 (invoice statement for "recover[ing] burned Ford pickup truck from [] mountain"); *id.* at 25-31].

Without any evidence from which to estimate a reasonable post-theft fair market value, the Court is unable to determine an accurate restitution award for victim Hortica Insurance at this time. Again, however, the Government and victim Hortica Insurance may provide supplementary information as to the amount of loss Hortica incurred despite its gain from its receipt or sale, if any, of the recovered items. *See Dolan*, 560 U.S. at 608 (2010).

---

[13] It is unclear why Defendants would have the Court subtract Hortica's amount of payments to its insured from the total pre-theft fair market value, *then* turn around and subtract that figure from Hortica's amount of payments to its insured. Rather, the figures more properly in question are the difference between Hortica's amount of payments to its insured and either (a) any sums it recouped through the sale of the items, if any, or (b) alternatively, the post-theft fair market value of the items, whichever is available. No evidence regarding these latter figures has been provided.

14

G

The Government's proposed restitution amount for several items is uncontested. Defendant Shelton does not object to proposed restitution in the amount of $10,500 on Items 13 and 19.[14] These items – a 2001 Chevy truck and rollback truck bed – were stolen from an individual who relied upon the vehicle in his business; the items were insured for loss by Progressive Insurance.[15] [R. 170, Ex. 1 at 11-12]. According to the victim's affidavit and his attached, signed letter, this amount reflects his lost income and use of the vehicle in the thirty-five days between the theft and his insurance recovery. The victim explains that he was forced to turn down hundreds of customers and lost his service contracts with three motor clubs during that time. [*Id.*] Shelton, again, has filed no objection or evidence to rebut the requested amounts. The Court finds that the victim's affidavit and signed letter are reliable and reflect a credible amount of restitution – particularly since, as of the date of his letter, this business owner was still trying to re-establish the three breached service contracts. *Accord Hamad*, 300 Fed. App'x 401 (affirming restitution based on victim's signed letter where the defendant's fraud caused lost income to his appraisal business and continued to damage his reputation in the field). The Court will award the proposed $10,500 in restitution for these items.

The Defendants have not objected to the proposed restitution award for Items 23 and 25. Defendants Davis, Richardson, Carr, and Shelton are responsible for restitution for Item 23, a Jerdan rollback bed, which was detached from a truck that was also stolen. The Government proposes a restitution award of $16,400. The victim, Kam's Auto

---

[14] In addition, Defendant Shelton does not object to the restitution amount for Item 11, which is discussed above in note 7.
[15] No claim was received from Progressive, and the government does not seek restitution as to it.

15

Service Center, initially submitted an affidavit seeking $17,500 but did not explain its basis for this figure. [R. 170, Ex. 1 at 18]. In further investigation, the Government contacted Ken Stahl, the business owner, to clarify the basis for this claim; the Government recounts their conversation in the Gentry Declaration. [R. 172-1]. Stahl explained that the fair market value of the stolen truck at the time of the theft was $17,500. [*Id.* at ¶ 3]. Law enforcement recovered the bed of the truck, which Stahl estimated to be worth $2,000 by itself. [*Id.*] Stahl travelled to Kentucky to retrieve the bed at a cost of $100 in gas, and he was required to pay the $800 recovery fee to a private contractor who recovered the bed for law enforcement. [*Id.*] The defendants have not objected to this proposed restitution amounts for this item,[16] and the Court finds that the victim's affidavit, corroborated and supplemented by the Assistant United States Attorney's sworn declaration, is reliable and supports a restitution award in the requested amount of $16,400.

All five defendants are liable for Item 25, a New Holland skid steer owned by Advanced Group of Marietta, Georgia and insured by Employers Mutual Casualty Company.[17] The Government supplied victims' affidavits, [R. 170, Ex. 1 at 1-10], and clarified its basis for the restitution amount in the Gentry Declaration, [R. 172-1 at ¶ 4]. This item was recovered by law enforcement, but the owner was required to incur recovery expenses ($1,035.95)[18] and repair expenses ($3,648.46),[19] which the insurer reimbursed. [R. 170, Ex. 1 at 3; Gentry Declaration, R. 172-1 at ¶ 4]. This, together with

---

[16] Defendant Carr explicitly stated that he had no objection to the restitution amount for this item. [R. 180].
[17] This New Holland skid steer is separate and distinct from Item 25.
[18] The Victim's affidavit explains that this figure accounts for $265.95 in mileage costs (591 miles at $0.49 a mile) and $770.00 in hourly wages (11 hours at $70.00 an hour). [R. 170, Ex. 1 at 1-2].
[19] [*See* R. 170, Ex. 1 at 8-10].

16

the owner's $500 deductible, totaled $5,184.41. [Gentry Declaration, R. 172-1 at ¶ 4]. As such, the Government requests restitution to Advanced Group in the amount of $500 and to EMCC in the amount of $4,684.41. [R. 172]. The defendants have filed no objection to this amount, and the Court finds that the victim's thorough documentation, together with the Assistant United States Attorney's corroboration in his declaration, is both reliable and sufficient to warrant restitution in the amount requested.

Finally, the Court notes that the Government has conceded its restitution claim for several items. [R. 172 (Items 2, 3, 4, 6, 8, 9, 10, 12, 15, 16, 17, 22, 24, 27, 28, 29, 30, and 31)]. No restitution will be awarded for those items.

### III

Accordingly, and for the foregoing reasons, it is hereby **ORDERED** as follows:

1. The Court **ORDERS** the following restitution amounts:

    a. For Item 5, a 1996 Ford dump truck chassis, restitution is ordered in the amount of $6,584.00;

    b. For Item 11, a 1996 Ford dump truck bed, restitution is ordered in the amount of $1,000.00;

    c. For Item 7, a 1999 Ford F550, restitution is ordered in the amount of $27,300.00;

    d. For Item 1, a GMC rollback truck, restitution in the amount of $2,250.00 shall be due to victim City Limits Motors; restitution in the amount of $12,750 shall be due to victim Haulers Insurance;

    e. For Item 21, a 1999 Dodge truck and its attached equipment, restitution is ordered in the amount of $15,000.00;

    f. For related Items 13 and 19, a 2001 Chevy truck and rollback truck bed, restitution covering both items is ordered in the total amount of $10,500.00;

    g. For Item 23, a Jerdan rollback bed, restitution is ordered in the amount of $16,400.00;

    h. For Item 25, a New Holland skid steer, restitution in the amount of $500.00 shall be due to victim Advanced Group; restitution in the amount of $4,684.41 shall be due to victim Employers Mutual Casualty Company;

    i. For Item 20, a Ford bucket truck, no restitution shall be ordered. The United States may, **within 45 days of the entry of this Order**, supplement its restitution claim for Item 20 on behalf of either or both of the two victims on that claim;

    j. For Items 14, 18, and 16, restitution in the total amount of $1,250.00 shall be due to victim Dreamscapes. Based on the calculation included in the United States' Memorandum at Docket Entry 172, the total restitution on Item 14 (a 2007 Hardeebuilt trailer) shall be $112.50, and the total restitution on Items 18 and 26 (a 2004 Ford Truck and a New Holland skid steer) shall be $1,012.50.

    k. For Items 14, 18, and 26, no restitution shall be ordered as to victim Hortica Insurance. The United States may, **within 45 days of the entry of this Order**, supplement its restitution claim for these items as to victim Hortica Insurance.

2. An Amended Judgment as to each defendant shall be entered promptly.

3. The Clerk is directed to send a certified copy of this Order to the U.S. Probation Office.

This the 6th day of May, 2015.



Signed By:
*Gregory F. Van Tatenhove*
United States District Judge